UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MANUEL NUNES, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 16-CV-11499-LTS |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) ) | |

MEMORANDUM AND ORDER

September 20, 2017

SOROKIN, J.

Manuel Nunes submitted a Title II application for a period of disability and disability insurance benefits on September 18, 2012, claiming an alleged onset date of May 29, 2012. R. at 125. Nunes's claims were denied initially and upon reconsideration on August 16, 2013. Id. Nunes filed a written request for a hearing on September 11, 2013, and appeared and testified at the hearing on September 4, 2014. Id. On September 24, 2014, the ALJ found at step one that Nunes had not engaged in substantial gainful activity since May 29, 2012, R. at 127; at step two that Nunes had multiple severe impairments, id.; at step three that those impairments did not meet the definition of a severe impairment or combination of impairments under the regulations, R. at 129; at step four that Nunes's RFC allowed for light work except that he was limited to standing or walking at least six hours in an eight hour day, sitting with normal breaks about six hours in an eight hour day, could climb, balance, stoop, kneel, crouch, crawl, and push and pull with his left upper extremity only occasionally, could never climb ropes, ladders and scaffolds,

1

could occasionally interact with the public, coworkers, and supervisors, could perform simple, routine, and repetitive tasks, and must avoid concentrated exposure to noise and moderate exposure to vibrations, fumes, odors, dust, gases, and poor ventilation, R. at 129–30; and at step five that jobs existed in significant numbers in the national economy that Nunes could perform, R. at 138.

The Appeals Council granted Nunes's request for review on March 3, 2016. R. at 5. On May 18, 2016, the Appeals Council issued a decision correcting Nunes's date last insured to December 31, 2014. R. at 5. The Appeals Council also found that Nunes was under a disability beginning September 24, 2014, but was not disabled before that. R. at 8.

Nunes then filed this action seeking judicial review by the Court pursuant to 42 U.S.C. § 405(g). Nunes asserts that he was disabled since his alleged onset date of May 29, 2012. Doc. No. 31 at 1. For the reasons stated below, the Court DENIES Nunes's Motion to Reverse, Doc. No. 20, and ALLOWS the Defendant's Motion to Affirm, Doc. No. 29.

## ANALYSIS[1]

A. Standard of Review

Here, because the Appeals Council ("AC") granted review, the Court considers the Council's decision as a final decision. Sims v. Apfel, 530 U.S. 103, 106–07 (2000) ("SSA regulations provide that, if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision."). Accordingly, the Court reviews the AC decision and the portions of the ALJ decision that it adopted. Id. The Court's jurisdiction is limited to reviewing the Administrative Record to determine whether the ALJ applied the proper

---

[1] In the interest of brevity, the Court will relate the factual background only where it is relevant to the analysis. The Court has considered the entire record and adopts the ALJ's findings of facts as amended by the Appeals Council.

legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind, reviewing the evidence in the record as a whole, could accept as adequate to support a conclusion. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Determinations of credibility and the resolution of conflicts in the evidence are for the Commissioner and not for the doctors or for courts. Id.; see Richardson v. Perales, 402 U.S. 389, 399 (1971).

Nevertheless, administrative findings of fact are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). If the Court finds that the Commissioner's decision is based on legal error or is not supported by substantial evidence, it has the power to modify or reverse the Commissioner's decision, with or without remanding for rehearing. 42 U.S.C. § 405(g).

B. ALJ's RFC Finding

Pursuant to 20 C.F.R. §§ 404.1520(e) and 416.920(e), the ALJ must determine a claimant's RFC, which is a claimant's ability to do physical and mental work on a sustained basis despite limitations from her impairments. In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 CFR 404.1520(e), 404.1545, 416.945; SSR 96-8p. The ALJ formulated Nunes's RFC as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to standing or walking at least 6 hours in an 8-hour day; sitting with normal breaks about 6 hours in an 8-hour day; occasionally climbing, balancing, stooping, kneeling, crouching, or crawling; never climbing ropes, ladders, and scaffolds; occasionally pushing and

3

pulling with his left upper extremity; occasionally interacting with the public, coworkers, and supervisors; and performing simple, routine, and repetitive tasks. The claimant must further avoid concentrated exposure to noise and moderate exposure [to] vibrations, fumes, odors, dust, gases, and poor ventilation.

R. at 129–30.

C. SSR 16p-3

At the time of the ALJ's decision in September 2014, Social Security Ruling ("SSR") 96-7p was the standard governing the evaluation of symptoms in disability claims. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). In March 2016, the Social Security Administration ("SSA") published SSR 16-3p, a new ruling superseding SSR 96-7 on the subject. See SSR 16-3p, 2016 WL 1237954 (March 16, 2016). This new ruling was effective when the AC issued its decision on May 18, 2016. See R. at 9. While the AC did not explicitly state whether it applied SSR 96-7p or SSR 16-3p, Nunes contends that because the AC adopted the ALJ's findings, and the ALJ applied SSR 96-7, the AC's decision relies on SSR 96-7. Doc. No. 31 at 9 ("The AC adopted the 'ALJ's statements regarding the pertinent provisions of the' Commissioner's Regulations. That would include the ALJ's application of Social Security Ruling 96-7p."). Thus, Nunes argues that the AC made an error of law by utilizing SSR 96-7p instead of SSR 16-3p in its evaluation. Id. at 10–11.

The ALJ's decision is consistent with the requirements of SSR 16-3p, and therefore the AC did not err in adopting the ALJ's findings. As other courts have noted, SSR 16-3p is a clarification of the previous ruling rather than a substantive change. See, e.g., Patterson v. Colvin, No. 13-CV-1040-JDB-TMP, 2016 WL 7670058, at *8 (W.D. Tenn. Dec. 16, 2016), report and recommendation adopted, No. 13-1040, 2017 WL 95462 (W.D. Tenn. Jan. 10, 2017) (finding that SSR 16-3p "simply clarifies the SSA's process for evaluating symptoms"); R.P. v. Colvin, No. 1:15-CV-00449-SMS, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016)

4

("Ruling 16-3p implemented a change of diction rather than substance."); Palmer v. Colvin, No. 6:16-CV-00223-NKL, 2017 WL 26908, at *7 (W.D. Mo. Jan. 3, 2017) ("[T]he ALJ's evaluation of [claimant]'s subjective complaints under SSR 96–7p, the then-existing ruling, rather than SSR 16–3p did not have a practical effect on the outcome."). While SSR 16-3p eliminates the use of the term "credibility," the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character." Cole v. Colvin, 831 F.3d 411, 412 (7th Cir. 2016). ALJs can "continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." Id. (emphasis in original). SSR 16-3p explicitly states that "[t]he adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." Id. Evidence from non-medical sources may be considered under 96-7p or 16-3p, but the ALJ did not need medical expertise to provide his personal observations.

The ALJ "[is] not required to credit the claimant's testimony" and is permitted to rely on personal observations of the claimant's demeanor during the hearing in making credibility determinations. See Del Rosario v. Colvin, No. 13–30017, 2014 WL 1338153, at *7 (D.Mass. Mar. 31, 2014) (recognizing the established principle that the ALJ "is not required to take the claimant's assertions of pain at face value" (citing Bianchi v. Sec'y of Health & Human Servs., 764 F.2d 44, 45 (1st Cir.1985))); Johnson v. Apfel, 240 F.3d 1145, 1147–48 (8th Cir. 2001); Reinertson v. Barnhart, 127 F. App'x 285, 290 (9th Cir. 2005) ("Although an ALJ's personal observations, standing alone, cannot support a determination that a claimant is not credible, they may form part of that determination.").

5

Nunes challenges various statements in the ALJ's opinion that he believes show the ALJ improperly assessing Nunes's credibility or making medical judgments based on personal observations or analysis of Nunes's daily activities. Doc. No. 31 at 13–17. Here, when the ALJ discussed credibility, he was properly assessing Nunes's statements about his symptoms to determine whether these statements were consistent with the overall medical record and other evidence, rather than improperly assessing Nunes's character. See R. at 135–37; Wood v. Berryhill, No. 4:15-CV-1248-LSC, 2017 WL 1196951, at *9 (N.D. Ala. Mar. 31, 2017) (finding that the ALJ did not violate SSR 16-3p even though she used the term "credibility," because she was not assessing plaintiff's "general, or 'overall' character for truthfulness"). In evaluating an individual's symptoms, ALJs must do more than make "a single conclusory statement" or "simply recite the factors described in the regulations." SSR 16-3p 2016 WL 1119029, at *9 (March 16, 2016). ALJs' must provide "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how adjudicators" reached their decisions. Id. The ALJ in this case met these requirements. As to the ALJ's statements about Nunes's concentration or daily activities, these were proper considerations under SSR 16-3p and not a case of the ALJ interpreting raw medical data. The ALJ was merely relying on personal observations in making a determination about the credibility of Nunes's assertions. See Del Rosario, 2014 WL 1338153, at *7.

D. Disability Onset Date and Medical Opinion Evidence

Nunes concedes that, if the ALJ's RFC assessment is correct, then his disability onset date as determined by the AC is correct. See Doc. No. 33 at 1 ("The Commissioner's residual functional capacity ('RFC') assessment of limited light work resulted in a September 2014 onset.

6

Whereas an RFC assessment of less than sedentary work would have resulted in a May 2012 onset.").

Nunes challenges the AC's and ALJ's analysis of the medical opinion evidence which led to a finding of limited light work. Nunes's argument boils down to a disagreement with the weight the ALJ gave to the different opinions. Nunes essentially asks the Court to "flip the standard of review, and ask whether there is substantial evidence that would have supported the ALJ in reaching a different conclusion, rather than asking whether there was substantial evidence to support the decision the ALJ made." Cordero Burgos v. Colvin, No. CIV. A. 13-30165-MGM, 2014 WL 4771737, at *4 (D. Mass. Sept. 23, 2014). The task of resolving evidentiary conflicts is a task for the Commissioner and her designee, "not for the doctors or the courts." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). If substantial evidence supports the ALJ's conclusions, the Court will not disturb the ALJ's findings. Id.

Here, the ALJ considered the many different medical opinions. Where the evidence was conflicting, "he resolved those conflicts by giving more weight to some evidence and less to others." Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). He gave significant weight to the State agency medical consultants for valid reasons, finding that their opinions are "consistent with the overall medical evidence in the record, including limited findings on physical and diagnostic exams, the conservative nature of his treatment, his good response to treatment, and his significant activities of daily living." R. at 138. Similarly, the ALJ discounted the opinions of other physicians for valid reasons. For instance, it was well within the ALJ's discretion not to rely on the neuropsychological evaluation performed by Dr. Hirsch, which Dr. Hirsch himself said "did not yield reliable and valid findings" due to potential malingering. Id. at 133. During the evaluation, Dr. Hirsch administered a number of tests, including the Mini Mental Status

Exam ("MMSE"), to determine whether Nunes had cognitive deficiencies. Doc. No. 31 at 17–19. In his report, Dr. Hirsch acknowledged that the results "reflect significant cognitive impairments frequently associated with individuals with significant head trauma or dementia," but also that the results were "consistent with individuals who are attempting to look more impaired than they actually are." R. at 472. The ALJ explained that he did not give weight to Dr. Hirsch's findings regarding the severity of Nunes's cognitive impairments "due to the invalidity of the results." Id. at 137. Similarly, the ALJ considered Nunes's nystagmus and unsteady gait but found that the conditions were not as severe as Nunes claimed. The Court will not disturb the ALJ's weighing of the evidence where, as here, his conclusion is supported by substantial evidence.[2]

Nunes claims that the AC improperly relied on the absence of medical records after December 31, 2013, and that this absence should not be held against him. Doc. No. 31 at 11–12. Nunes explains that he did not submit records beyond December 2013 because of the incorrect DLI previously determined by the ALJ and the AC's notice, which stated that he could submit additional evidence only under limited circumstances that did not seem to apply to him. Id.

In his September 2014 decision, the ALJ found that Nunes's DLI was December 31, 2013, and therefore only made findings about Nunes's medical conditions through that date. R. at 127, 129–30. The AC's decision later corrected the DLI to December 31, 2014 and applied the

---

[2] The ALJ did mistakenly refer to a few exams in his opinion but his decision still is supported by substantial evidence. The ALJ referred to an exam in August 2012 which assessed the range of motion for Nunes's left middle finger and used the result in concluding that Nunes's shoulder showed a full range of motion. Doc. No. 31 at 13. But other substantial evidence supported the ALJ's conclusion as to range of motion; the ALJ relied on x-ray and MRI evidence which showed no significant impairments in reaching his conclusion and gave specific reasons for discounting Nunes's subjective complaints of pain and limitation. R. at 135. With regards to gait and coordination, the ALJ also stated that there was no positive straight leg raise test but there was such a test in the record. R. at 819. But the ALJ relied on other substantial evidence, including imaging and Nunes's own description of his daily activities, in assessing the intensity of Nunes's symptoms. R. at 136.

ALJ's findings through September 24, 2014, the date of the ALJ's decision and the date on which the AC states Nunes became disabled due to him being an "individual closely approaching advanced age." Id. at 7. In making this determination, the AC noted that the evidence in Nunes's medical record showed no significant changes in the claimant's medical condition from December 31, 2013, through September 24, 2014, and no evidence of significant ongoing treatment. Id. at 6.

Nunes has not shown that the AC made any prejudicial error that merits a reversal or remand. Finding that there were no significant changes in Nunes's condition after December 31, 2013, the AC simply applied the ALJ's findings about Nunes's impairments as of that date through September 24, 2014. See R. at 6. There was no finding of subsequent improvements to Nunes's condition by either the ALJ or the AC. Id. Thus, unless there were indeed significant changes in Nunes's medical condition after December 31, 2013, submitting additional medical records would not have changed the AC's disability assessment. Id. at 6. Nunes does not argue that there have been such significant changes; in fact, Nunes has argued that his impairments are "permanent" and reached a plateau, neither improving nor worsening since December 31, 2013.[3] Id. at 323; Doc. No. 31 at 11. Accordingly, Nunes's argument fails.

---

[3] Although Nunes complains about the "incorrect DLI" in his brief, the core of Nunes's objection is that he did not submit additional documents to the AC because of the DLI that was incorrectly determined by the ALJ, and that the AC therefore should not have relied on the lack of proof that Nunes's "pain and limitations remained or worsened after December 2013." Doc. No. 31 at 11–12. Nunes argues that he "could not envision a circumstance in which any additional records—even if submitted—would change the outcome where the AC had made its intentions clear in its notice." Doc. No. 31 at 12. Such an assertion of prejudgment by the AC is baseless and, considering the contents of the notice, without merit.

CONCLUSION

For the reasons stated above, the Court DENIES Nunes's Motion to Reverse, Doc. No. 20, and ALLOWS the Defendant's Motion to Affirm, Doc. No. 29.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge